UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

MIKHAIL GURMAN; ESTER KRUGLYAK; VALERIY BABUSHKIN; SVETLANA BABUSHKINA; SVETLANA BARSKIY; RADA SHEVTSOV, f/k/a Rada Babushkina; and VICRO HOME CARE, INC., a Minnesota Corporation,

Plaintiffs,

v.

METRO HOUSING AND REDEVELOPMENT AUTHORITY; METROPOLITAN COUNCIL; CARVER COUNTY COMMUNITY DEVELOPMENT AGENCY; TAMARA M. PETERS, f/k/a Tamara M. Witt, officially and individually; MARY G. DOBBINS, officially and individually; THERESE A. SMITH, officially and individually; BETH A. REETZ, officially and individually; KATHLEEN M. SHEA, officially and individually; ALLISON STREICH, officially and individually; LANDRUM AND DOBBINS, LLC, a Minnesota limited liability company; and DEFENDANTS X, Y, AND Z,

Defendants.

Case No. 11-CV-0228 (PJS/JJG)

ORDER

---

Under Fed. R. Civ. P. 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The words "short and plain" are themselves short and plain, and they mean what they say: A complaint must be concise, and it must be clear. Rule 8 was not promulgated to provide helpful advice; it has the force of law, and it must be followed.

In this case, plaintiffs' attorneys have utterly failed to comply with Rule 8. This case grows out of a relatively simple dispute regarding whether two elderly couples living in Section 8 housing are entitled to a one-bedroom apartment (as is typically true for married couples) or a two-bedroom apartment (as is typically true when separate bedrooms are medically necessary). Yet plaintiffs' complaint[1] is not "short." It sprawls across 60-odd pages and almost 250 paragraphs. Nor is plaintiffs' complaint "plain." Plaintiffs' factual and legal allegations are, to a substantial extent, incomprehensible. Plaintiffs' complaint manages to be both prolix and uninformative.

Further, plaintiffs' complaint almost certainly violates Fed. R. Civ. P. 11(b)(2) with respect to at least some claims. Rule 11(b)(2) requires counsel, before filing a complaint, to form a reasonable belief that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . ." Fed. R. Civ. P. 11(b)(2). The complaint includes 17 different claims — most of which appear to be brought by all 7 plaintiffs against all 13 defendants (3 of whom are unnamed). It is inconceivable that all 17 of these claims satisfy Rule 11(b)(2) as asserted by *every* plaintiff against *every* defendant, and some of these claims almost certainly do not satisfy Rule 11(b)(2) as asserted by *any* plaintiff against *any* defendant.

This Court has repeatedly criticized the filing of "kitchen-sink" or "shotgun" complaints — complaints in which a plaintiff brings every conceivable claim against every conceivable

---

[1]Formally, the complaint at issue is plaintiffs' amended complaint, filed March 1, 2011. Am. Compl. [Docket No. 9]. For the sake of simplicity, the Court refers to the amended complaint simply as the "complaint."

defendant.[2] Such complaints are pernicious for many reasons. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 981 (11th Cir. 2008) ("The unacceptable consequences of shotgun pleading are many."). For one thing, complaints like the one in this case unfairly burden defendants and courts. The plaintiff who files a kitchen-sink complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. In this case, for example, plaintiffs have essentially coughed up an unsightly hairball of factual and legal allegations, stepped to the side, and invited the defendants and the Court to pick through the mess and determine if plaintiffs may have pleaded a viable claim or two.

This is emphatically not the job of either a defendant or the Court. It is the plaintiffs' burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them.

By filing a patently improper complaint in this case — a complaint that is neither concise nor clear, and that is littered with frivolous allegations — plaintiffs have wasted the time and

---

[2] *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 780 n.5 (D. Minn. 2009); *Hough v. Shakopee Pub. Sch.*, 608 F. Supp. 2d 1087, 1091-92 (D. Minn. 2009); *Woods v. Xcel Energy*, No. 06-CV-5014, 2008 U.S. Dist. LEXIS 57005, at *48, 2008 WL 2885983, at *16 (D. Minn. July 22, 2008); *Randall v. Lady of Am. Franchise Corp.*, 532 F. Supp. 2d 1071, 1074 (D. Minn. 2007); *M.P. ex rel. K.P. v. Indep. Sch. Dist. No. 721*, No. 01-771, 2007 U.S. Dist. LEXIS 18874, at *7 n.2, 2007 WL 844688, at *3 n.2 (D. Minn. Mar. 16, 2007); *Stellar-Mark, Inc. v. Advanced Polymer Tech. Corp.*, No. 05-2445, 2006 U.S. Dist. LEXIS 72535, at *1-2, 2006 WL 2860924, at *1 (D. Minn. Oct. 4, 2006); *Fearing v. St. Paul Police Dep't*, No. 02-4744, 2005 U.S. Dist. LEXIS 6785, at *20-21, 2005 WL 914733, at *7 (D. Minn. Apr. 20, 2005); *Larson ex rel. Larson v. Indep. Sch. Dist. No. 361*, No. 02-3611, 2004 U.S. Dist. LEXIS 3322, at *58-59, 2004 WL 432218, at *20 (D. Minn. Mar. 2, 2004); *Bellecourt v. United States*, 784 F. Supp. 623, 632-33 (D. Minn. 1992); *Liggins v. Morris*, 749 F. Supp. 967, 971 (D. Minn. 1990).

money of the defendants, almost all of whom are public agencies and public officials who serve the poor and disadvantaged. Plaintiffs have also wasted the time and resources of this Court. When judicial resources are wasted in dealing with improper complaints, the burden ultimately falls on the taxpayers, who fund the court system. And when judicial resources are diverted to dealing with improper complaints, the business of other litigants — litigants who have complied with the Federal Rules of Civil Procedure and who may have meritorious claims to be resolved — is needlessly delayed. That is true in any court, but it is especially true in the District of Minnesota, which is among the 4 or 5 busiest of the 94 federal judicial districts. *See Powell v. I-Flow Corp.*, 711 F. Supp. 2d 1012, 1017 (D. Minn. 2010).

It is important to note that kitchen-sink complaints also harm the very plaintiffs who bring them. In most cases, a genuine dispute that supports a viable legal claim — or even a few viable legal claims — underlies a plaintiff's complaint. But this genuine dispute becomes almost impossible to discern when it is wreathed in a halo of frivolous and near-frivolous legal claims. The bad obscures the good.

Unfortunately, the Court often does not learn of a complaint's failure to comply with Rule 8 and Rule 11 until the summary-judgment stage, at which point it is usually more efficient for the Court to simply rule on the summary-judgment motion before it. But in this case, plaintiffs' complaint is before the Court on a motion to dismiss. And at this early stage in the litigation, the Court will no longer tolerate the filing of kitchen-sink complaints — complaints that almost always violate Rule 8 and often violate Rule 11.[3]

---

[3]*Cf. Liggins*, 749 F. Supp. at 971 ("The time has come for practitioners in this district to prepare complaints alleging violations of 42 U.S.C. § 1983 in a fashion that will identify the specific claims of individual plaintiffs for specific constitutional violations as against only

The Court will therefore dismiss plaintiffs' complaint for failure to comply with Rule 8, but the Court will stay the dismissal until July 29, 2011. If plaintiffs wish to pursue their lawsuit, they must file a second amended complaint that complies with both Rule 8 and Rule 11 by July 29, 2011. Given the substantial defects in plaintiffs' complaint, the Court provides some additional guidance that plaintiffs must follow if they choose to file a second amended complaint:

First, the second amended complaint must not exceed 10,000 words.

Second, the facts with respect to each set of plaintiffs must be presented chronologically, and the complaint must make clear which specific plaintiffs and which specific defendants are the subject of which specific allegations. Blanket references to "plaintiffs" or "defendants" are unacceptable unless the references genuinely apply to every plaintiff and every defendant.

Third, as required by Rule 11(b)(3), plaintiffs' factual contentions must "have evidentiary support" and must not be misleading by omission. To take only one example of a misleading contention, the complaint asserts that the denial by defendant Metro Housing and Redevelopment Authority ("Metro HRA") of a two-bedroom Section 8 voucher to the Gurmans "is the subject of a *current appeal* that was heard by Metro HRA . . . ." Am. Compl. ¶ 120 (emphasis added). This plainly implies that, when the complaint was drafted, the appeal was not decided. Yet

---

culpable defendants. This court is no longer disposed to perform what should be the responsibility of diligent counsel in that regard. Accordingly, when hereafter confronted with a complaint that does nothing more than identify a multitude of parties plaintiff, a number of defendants, a series of counts, and allegations of violations of every known constitutional provisions [*sic*] and common law cause of action, the court will deem the complaint inadequate. Such a complaint will be subject to dismissal for failure to comply with Rule 8 and Rule 11 of the Federal Rules of Civil Procedure."); *Bellecourt*, 784 F. Supp. at 633 (quoting this language from *Liggins* and applying it to a claim under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)).

attached to the complaint as Exhibit G is a written order dated February 18, 2011 showing that the appeal was decided, and the Gurmans lost.

To take another example of a misleading contention, the complaint asserts that "Defendants" — all of them, apparently — "admitted to employing a policy that intentionally discriminates against disabled people . . . ." Am. Compl. ¶ 121. To support this rather remarkable assertion, the complaint cites the written order rejecting the Gurmans' appeal of a defendant's denial of a two-bedroom Section 8 voucher. The Court has reviewed that order and, although it refers to arguments made by plaintiffs' counsel to the effect that Metro HRA has a policy that discriminates against disabled people, the Court finds no suggestion in the order that *any* defendant — much less *every* defendant — admitted discriminating on the basis of disability.

Fourth, as required by Rule 11(b)(2), plaintiffs' claims and legal contentions must not be frivolous. Yet many of the 17 claims in plaintiffs' complaint appear to be either entirely frivolous or frivolous with respect to certain defendants. For instance, the Court doubts that plaintiffs have even one nonfrivolous claim against defendants Mary Dobbins and her law firm, Landrum and Dobbins, LLC, who merely served as counsel for one of the defendants in administrative proceedings. And the Court discerns no basis in the complaint for a claim of race discrimination in contracting under 42 U.S.C. § 1981. Further, to the extent that plaintiffs' various discrimination claims assert every possible basis for discrimination — disability, religion, sex, age, and national origin — the Court strongly suspects that no evidence supports claims of discrimination on certain of these bases. (If such evidence exists, it is surely not apparent from the complaint.) And, almost certainly, not every state tort claim can be asserted by every plaintiff against every defendant. For example, almost certainly, not *every* defendant

uttered *every one* of the allegedly defamatory statements described in paragraphs 162 and 163 of the complaint, as the complaint alleges.[4]

By singling out some of plaintiffs' claims for comment in this order, the Court does not mean to suggest that plaintiffs' other claims are nonfrivolous. Precisely because of the complaint's failure to comply with Rule 8, the Court has difficulty figuring out the factual and legal bases of plaintiffs' claims, and the Court thus cannot reliably assess the relative merit of plaintiffs' claims.

But plaintiffs are now on notice: They will not be given another chance to make their claims "plain." If plaintiffs file a second amended complaint and the Court cannot understand the factual or legal basis of a claim in that complaint, the Court will not hesitate to dismiss the claim. Plaintiffs are represented by counsel, and it is counsel's job to present plaintiffs' claims with sufficient clarity that the Court can determine the nature of plaintiffs' claims and whether those claims are legally cognizable.

Finally, the Court notes that if plaintiffs file a second amended complaint, and a defendant moves to dismiss that complaint, plaintiffs must adequately brief their opposition to defendant's motion. In opposing a motion to dismiss a particular claim, plaintiffs must do more than quote their complaint at length and say little more than "that looks good enough to us." Plaintiffs must meet defendants' contentions on the merits, with reasoned analysis and citation to relevant authority. The Court will not do plaintiffs' legal work for them.

---

[4]It is also clear that the defamation claims are not adequately pleaded, as they do not clearly identify who said what to whom and when. *See, e.g.*, *Pinto v. Internationale Set, Inc.*, 650 F. Supp. 306, 309 (D. Minn. 1986) ("A claim for defamation must be pleaded with specificity. Plaintiffs have failed to allege who made the allegedly libelous statements, to whom they were made, and where." (citation omitted)).

Before concluding, the Court adds a few words of warning for Metro HRA. If Metro HRA moves to dismiss plaintiffs' second amended complaint, Metro HRA must be more forthcoming than it was with respect to its pending motion to dismiss. Specifically:

The most puzzling aspect of this case relates to an accusation made by Metro HRA in January 2010 that the Gurmans and the Babushkins conspired with Vicro Home Care (a company owned by their daughters, who also are their landlords) to commit fraud in connection with their applications for Section 8 vouchers. The complaint attaches the letters from Metro HRA making this accusation and terminating the Gurmans' and Babushkins' benefits because of the alleged fraud. Am. Compl. Exs. B-1 & B-2. Oddly, however, Metro HRA seems to have abandoned the fraud allegations two months later. Am. Compl. ¶ 100.

In the memorandum supporting its motion to dismiss, Metro HRA acts as if it never accused the Gurmans and Babushkins of fraud. Indeed, citing the January 2010 notice that accused the Gurmans of fraud, Metro HRA says simply that "Metro HRA notified the Gurmans that it intended to terminate their benefits on January 20, 2010." Metro HRA Defs. Mem. Supp. Mot. Dismiss at 11 [Docket No. 23]. And Metro HRA says that it "withdrew its termination of the Gurmans' benefits" a few months later because Metro HRA determined that the termination would not be upheld because Metro HRA lacked photographs of the Gurmans' bedroom. *Id.* Metro HRA likewise scrubs any reference to its fraud allegations in its discussion of terminating the Babushkins' benefits in January 2010. *Id.* at 13.

Metro HRA's omission of any reference to the fraud allegations is inexplicable, and it casts doubt on Metro HRA's explanation of events. Metro HRA cannot simply pretend that it

never accused the Gurmans, the Babushkins, and Vicro of fraud, particularly when the fraud allegations are apparently a driving force behind the lawsuit.

In addition, Metro HRA makes the misleading argument that the Gurmans and Babushkins were "never deprived of the property interest they held in their Section 8 benefits" because Metro HRA "rescinded the [January 2010] termination notices and took no further action to terminate the Section 8 benefits of either the Gurmans or the Babushkins." *Id.* at 22. It may be true that Metro HRA did not *terminate* their benefits, but it appears that Metro HRA *reduced* their benefits: The Gurmans and Babushkins used to have two-bedroom Section 8 vouchers, and at some point, Metro HRA awarded them only one-bedroom vouchers. The reduction in the amount of their vouchers likely amounts to a deprivation of a property interest. (Whether the Gurmans and Babushkins received due process of law before being deprived of that property interest is a different question.) Metro HRA does itself no favors by glossing over the apparently undisputed reduction in plaintiffs' benefits.

In summary, if this litigation goes forward, the Court expects better from the parties and their attorneys.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion of defendants Metro Housing and Redevelopment Authority, Metropolitan Council, Tamara M. Peters, Therese A. Smith, Beth A. Reetz, and Kathleen M. Shea to dismiss [Docket No. 11] is DENIED WITHOUT PREJUDICE.

2. The motion of defendants Mary G. Dobbins and Landrum and Dobbins, LLC to dismiss [Docket No. 13] is DENIED WITHOUT PREJUDICE.

3. The motion of defendants Carver County Community Development Agency and Allison Streich to dismiss [Docket No. 15] is DENIED WITHOUT PREJUDICE.

4. Plaintiffs' first amended complaint [Docket No. 9] will be dismissed without prejudice for failure to comply with Rule 8 on July 29, 2011. If plaintiffs wish to continue to litigate their claims in federal court, they must, by July 29, 2011, file a second amended complaint that complies with the directives set forth above.

Dated: June 30, 2011

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge