UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MIKHAIL GURMAN; ESTER KRUGLYAK; VALERIY BABUSHKIN; SVETLANA BABUSHKINA; SVETLANA BARSKIY; RADA SHEVTSOV, f/k/a Rada Babushkina; and VICRO HOME CARE, INC., a Minnesota Corporation, | Case No. 11-CV-0228 (PJS/JJG) |
| Plaintiffs, | |
| v. | |
| METRO HOUSING AND REDEVELOPMENT AUTHORITY; METROPOLITAN COUNCIL; CARVER COUNTY COMMUNITY DEVELOPMENT AGENCY; LANDRUM AND DOBBINS, LLC; MARY G. DOBBINS, officially and individually; TAMARA M. PETERS, f/k/a Tamara M. Witt, officially and individually; THERESE A. SMITH, officially and individually; BETH A. REETZ, officially and individually; KATHLEEN M. SHEA, officially and individually; ALLISON STREICH, officially and individually; and DEFENDANTS X, Y, AND Z, | MEMORANDUM OPINION AND ORDER |
| Defendants. | |

Richard A. Saliterman, Brian P. Lundgren, and Brett M. Larson, SALITERMAN & SIEFFERMAN, PC, for plaintiffs.

Andrew D. Parker, Anthony G. Edwards, and Tammy L. Pust, PARKER ROSEN LLC, for defendants Metro Housing and Redevelopment Authority, Metropolitan Council, Tamara Peters, Therese Smith, Beth Reetz, and Kathleen Shea.

Jessica A. Megorden and James R. Andreen, ERSTAD & RIEMER, PA, for defendants Carver County Community Development Agency and Allison Streich.

John M. LeFevre, Jr. and Peter G. Mikhail, KENNEDY & GRAVEN, CHARTERED, for defendants Mary G. Dobbins and Landrum and Dobbins, LLC.

Seven plaintiffs — Mikhail Gurman and Ester Kruglyak ("the Gurmans") and their daughter, Svetlana Barskiy; Valeriy Babushkin and Svetlana Babushkina ("the Babushkins") and their daughter Rada Shevtsov; and Vicro Home Care, Inc. ("Vicro"), a health-care corporation owned by Barskiy and Shevtsov — brought this lawsuit against certain government agencies and employees who are responsible for administering the Section 8 housing program in the Twin Cities area.  Plaintiffs' lawsuit was directed at ten defendants, divided into three groups:

The first group consisted of Metro Housing and Redevelopment Authority ("Metro HRA"), the Metropolitan Council, and four Metro HRA employees — Kathleen Shea, Tamara Peters, Beth Reetz, and Therese Smith (collectively "the Metro HRA Defendants").

The second group consisted of Carver County Community Development Agency and one of its employees, Allison Streich (collectively "the CCCDA Defendants").

The final group consisted of Metro HRA's outside counsel, Mary Dobbins, and her law firm, Landrum and Dobbins, LLC (collectively "the Dobbins Defendants").

This lawsuit arose out of a relatively straightforward dispute over Section 8 benefits, no different from hundreds of Section 8 disputes that are resolved by federal and state courts and administrative-law judges every year.  Plaintiffs had several viable claims.  In particular, the Gurmans and the Babushkins had viable due-process claims arising out of the reduction of their respective housing vouchers in 2009.  Plaintiffs may each have had a viable defamation claim against one or two of the defendants (although those defendants likely had formidable defenses to those claims).  And finally, the Babushkins conceivably had a viable claim arising out of the suspension of their housing voucher altogether in November 2010.  Rather than litigating this handful of viable claims, however, plaintiffs' law firm — Saliterman & Siefferman, PC ("S&S")

— brought not one, not two, but three kitchen-sink complaints, in which it asserted literally

*hundreds* of claims against defendants, almost all of which were frivolous.  Even worse, the last

of these kitchen-sink complaints was filed by S&S *after* the firm had been clearly and

emphatically warned by this Court to refrain from bringing frivolous claims.[1]

Soon after plaintiffs filed their second amended complaint, the Metro HRA Defendants

and the CCCDA Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a

claim.  *See* ECF Nos. 39 and 41.  Meanwhile, the Dobbins Defendants, who had been dropped

from the second amended complaint, moved for sanctions under Fed. R. Civ. P. 11 and 28 U.S.C.

§ 1927.  *See* ECF No. 45.  The Court held a hearing on these motions on December 8, 2011.

After nearly three and a half hours in the courtroom, the Court had covered barely half of the

---

[1]Plaintiffs' initial 59-page, 12-count complaint was brought in state court.  *See* ECF No. 1-1.  Defendants removed the lawsuit to this Court on January 28, 2011.  *See* ECF No. 1. A few weeks later, on March 1, 2011, plaintiffs filed a first amended complaint.  *See* ECF No. 9. The amended complaint contained 17 counts.  Nine counts were brought on behalf of all seven plaintiffs against all ten defendants; two counts were brought on behalf of all plaintiffs save Vicro against all defendants; four counts were brought on behalf of the Gurmans and the Babushkins against all defendants; one count for abuse of process was brought on behalf of Barskiy and Shevtsov against all defendants; and finally one count for breach of contract was brought on behalf of the Gurmans and the Babushkins against the Metropolitan Council and the CCCDA.  In total, plaintiffs' first amended complaint contained *938* separate claims.

In an order dated June 30, 2011, the Court admonished S&S for filing a complaint that violated Rules 8 and 11 of the Federal Rules of Civil Procedure.  *See* ECF No. 37.  Although the Court was inclined to dismiss the entire complaint, the Court gave S&S and plaintiffs one last chance to file a complaint that complied with the rules, emphatically warning S&S and plaintiffs to weed out the hundreds of plainly meritless claims.

Plaintiffs filed a second amended complaint on July 29, 2011, dropping the Dobbins Defendants from the lawsuit.  *See* ECF No. 38.  Plaintiffs also dropped 4 state-law counts, leaving 13 counts against the remaining 8 defendants.  Despite the clear warning from the Court, 12 out of 13 counts were filed against each and every defendant, and most of the 13 counts were brought on behalf of each and every plaintiff.  In total, plaintiffs' second amended complaint contained *634* separate claims.

counts in plaintiffs' second amended complaint.  The Court continued the hearing and ordered the parties to contact Magistrate Judge Jeanne J. Graham for an early settlement conference.  *See* ECF No. 70.  The Court also issued an order compelling S&S and S&S attorneys Richard Saliterman, Brian Lundgren, and Brett Larson to show cause why they should not be sanctioned under Fed. R. Civ. P. 11 or 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying these proceedings by filing the second amended complaint.  *See* ECF No. 75.

On January 23, 2012, after two full days of mediation before Judge Graham, the parties agreed to settle this lawsuit.  Over the next two months, the parties reduced their agreement to writing and, on April 13, 2012, the Court dismissed the lawsuit with prejudice and on the merits. *See* ECF No. 101.  Here before the Court are three pending matters: (1) S&S's response to the Court's show-cause order, *see* ECF No. 75; (2) the Dobbins Defendants' motion for sanctions, *see* ECF No. 45; and (3) plaintiffs' motion for attorney's fees under 42 U.S.C. § 1988, *see* ECF No. 91.[2]

The factual background was previously set forth in the Court's January 13 show-cause order and will not be repeated here.  The Court addresses each of the pending matters in turn.

### A.  Sanctions Pursuant to the Court's Show-Cause Order

Under Rule 11(b)(2), an attorney must certify, after conducting a reasonable inquiry, that "the claims, defenses, and other legal contentions [asserted in the complaint] are warranted by

---

[2]Only one other matter remains:  On April 26, 2012, William Skolnick, an attorney that attended the settlement conferences on behalf of plaintiffs, moved to enforce an attorney's lien against plaintiffs for unpaid fees and costs.  *See* ECF No. 103.  Plaintiffs contested the factual allegations in Skolnick's motion.  *See* ECF Nos. 105-07.  The Court has scheduled an evidentiary hearing on this matter for September 5, 2012.  *See* ECF No. 108.

existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or

for establishing new law . . . ."  To determine whether an attorney has violated this provision, a

court "must determine whether a reasonable and competent attorney would believe in the merit of

an argument."  *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003) (internal quotations omitted).

The attorney must further certify that the factual contentions in the complaint "have evidentiary

support or, if specifically so identified, will likely have evidentiary support after a reasonable

opportunity for further investigation . . . ."  Fed. R. Civ. P. 11(b)(3).  Finally, the attorney must

certify that the complaint is "not being presented for any improper purpose, such as to harass,

cause unnecessary delay, or needlessly increase the cost of litigation . . . ."  Fed. R. Civ. P.

11(b)(1).  An attorney who violates these provisions may be sanctioned.  *See* Fed. R. Civ. P.

11(c)(1).

      An attorney may also be ordered to pay the opposing party's attorney's fees under 28

U.S.C. § 1927 for "multipl[ying] the proceedings in any case unreasonably and vexatiously . . . ."

An award of fees under this section is warranted "when an attorney's conduct, viewed

objectively, manifests either intentional or reckless disregard of the attorney's duties to the

court."  *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006) (internal

quotations omitted).

      Although S&S does not raise this argument in its response to the show-cause order, the

Court notes that an attorney cannot be sanctioned under § 1927 for simply commencing a

frivolous lawsuit.  *See, e.g.*, *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 65 (1st Cir. 2008) ("[W]e

join an unbroken band of cases across the courts of appeals holding that a lawyer cannot violate

section 1927 in the course of commencing an action.");  *In re Keegan Mgmt. Co., Sec. Litig.*, 78

F.3d 431, 435 (9th Cir. 1996) ("The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927.").  Here, though, S&S's vexatious conduct went beyond filing the initial frivolous complaint.  In its June 30 order, the Court made clear that plaintiffs' first amended complaint almost surely violated Rule 11.  *See* ECF No. 37 at 2 ("It is inconceivable that all 17 of these claims satisfy Rule 11(b)(2) as asserted by *every* plaintiff against *every* defendant, and some of these claims almost certainly do not satisfy Rule 11(b)(2) as asserted by *any* plaintiff against *any* defendant." (emphasis in original)). Rather than proceeding to sanction S&S immediately, the Court gave S&S and plaintiffs a final chance to meet their obligations under Rule 11.  S&S was explicitly warned that, if it filed a second amended complaint, S&S must: (1) "make clear which specific plaintiffs and which specific defendants are the subject of which specific allegations," *id.* at 5; (2) ensure that the factual allegations in the complaint "have evidentiary support," as required by Rule 11(b)(3); and (3) ensure that the legal claims asserted in the complaint are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," as required by Rule 11(b)(2).

Any reasonable and competent attorney would have responded to the Court's June 30 order by carefully going through the first amended complaint line-by-line and re-pleading only those claims that would pass muster under Rule 11.  Instead of doing that, however, S&S chose to re-plead many of the same frivolous claims, thereby unreasonably and vexatiously multiplying the proceedings.  To cite several examples:

*First*, S&S asserted malicious-prosecution and abuse-of-process claims on behalf of Barskiy, Shevtsov, and Vicro, even though it is undisputed that they were not prosecuted or

subjected to legal process of any kind.  *See* ECF No. 75 at 7-8 (citing Second Am. Compl.

¶¶ 102, 115 and ECF No. 59 at 35).  In its response to the show-cause order, S&S makes a

number of arguments regarding these claims that are meritless or irrelevant (or both).

S&S first contends that the claims for malicious prosecution and abuse of process were

brought on behalf of Barskiy, Shevtsov, and Vicro because defendants took administrative action

against Barskiy's and Shevtsov's respective *parents* in retaliation for the assistance that Barskiy,

Shevtsov, and Vicro provided to Russian immigrants.  *See* ECF No. 80 at 7-10.  S&S argues that

such claims were reasonable, and cites in support of its argument a number of cases concerning

claims for third-party retaliation in the employment-law context.  S&S contends that these cases

stand for the proposition that an "action taken against a family member in order to coerce or

threaten a person who has engaged in protected activity is an actionable claim . . . ."  *Id.* at 8

(citing *Craig v. Suburban Cablevision, Inc.*, 660 A.2d 505, 509 (N.J. 1995)).  In the cases cited

by S&S, however, it is the family member against whom the retaliatory action was taken who

was held to have a cause of action — the person in the position of Barskiy's and Shevtsov's

respective *parents*.  Here, by contrast, it was Barskiy, Shevtsov, and Vicro — who themselves

were not subjected to any kind of prosecution or legal process — who were seeking to recover

because *someone else* had been subjected to malicious prosecution and abuse of process.  Even if

the Gurmans and the Babushkins were prosecuted and subjected to legal process for improper

purposes, that would still not give Barskiy, Shevtsov, or Vicro causes of action for malicious

prosecution and abuse of process.  No reasonable and competent attorney could have believed

otherwise.

Next, S&S argues that administrative proceedings may give rise to claims for malicious prosecution.  *See* ECF No. 80 at 9 (citing *Donovan v. Barnes*, 548 P.2d 980, 983 (Or. 1976)). That may be true, but it is also irrelevant.  The Court is not sanctioning S&S because the underlying prosecution was administrative; rather, the Court is sanctioning S&S because it brought malicious-prosecution claims on behalf of parties who were not *prosecuted* — administratively or otherwise.

Finally, S&S contends that the term "process" should be interpreted broadly "'to encompass the entire range of procedures incident to litigation.'"  ECF No. 80 at 11 (quoting *Barquis v. Merchants Collection Ass'n.*, 496 P.2d 817, 824 n.4 (Cal. 1972)).  According to S&S, the termination-of-benefits letters that were sent to the Gurmans and the Babushkins constituted process.  *Id.*  Even if that were so — and the Court is skeptical that the Minnesota Supreme Court would define "process" so broadly — those letters were not directed to Barskiy, Shevtsov, or Vicro, and thus would not give them causes of action for abuse of process.

*Second*, S&S asserted a claim for intentional infliction of emotional distress on behalf of Vicro, even though common sense coupled with a modicum of legal research would have revealed that corporations do not have emotions and therefore cannot bring claims for emotional distress.[3]  *See* ECF No. 75 at 8 (citing Second Am. Compl. ¶ 120).  S&S admits that "[u]sing the

---

[3]*See Wilson v. Colonial Penn Life Ins. Co.,* 454 F. Supp. 1208, 1213 n.9 (D. Minn. 1978) ("Certainly, the plaintiff National City Bank of Minneapolis is incapable of suffering emotional distress."); *see also Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37 n.2 (1st Cir. 2000) ("Because corporations, unlike natural persons, have no emotions, they cannot press claims for intentional infliction of emotional distress."); *F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994) ("Since a corporation lacks the cognizant ability to experience emotions, a corporation cannot suffer emotional distress."); *Lampliter Dinner Theater, Inc. v. Liberty Mut.*
(continued...)

broader term 'Plaintiffs' was a mistake," but maintains that the error was inadvertent.  *See* ECF

No. 80 at 13; *see also* ECF No. 82 at ¶ 19; ECF No. 83 at ¶ 30.  The Court might be sympathetic

to this excuse if the Court had not explicitly warned S&S in its June 30 order that, if S&S chose

to file another complaint, that complaint "must make clear which specific plaintiffs and which

specific defendants are the subject of which specific allegations."  ECF No. 37 at 5.  The Court

could not have been more clear:  "Blanket references to 'plaintiffs' or 'defendants' are

unacceptable unless the references genuinely apply to every plaintiff and every defendant."  *Id.*

S&S ignored the Court's specific instructions.

 *Third*, S&S asserted a claim for conversion on behalf of Vicro, even though it is

undisputed that Vicro had no property interest in either the Gurmans' or the Babushkins'

Section 8 benefits.  *See* ECF No. 75 at 9 (citing Second Am. Compl. ¶ 128); *see also* ECF No. 78

at 103.  S&S contends that there is authority to support the theory that a corporation's goodwill

may be converted.  *See* ECF No. 80 at 14 (citing *In Re Corbin's Estate*, 391 So.2d 731, 733 (Fla.

Ct. App. 1980)).  S&S says that it brought a conversion claim on behalf of Vicro to remedy

"damage to [Vicro's] relationship with its clients . . . ."  *Id.*  This argument is unpersuasive.  To

begin with, it is not clear that Minnesota recognizes a claim for the conversion of goodwill.  *See*

*Coyne's & Co., Inc. v. Enesco, LLC,* 565 F. Supp. 2d 1027, 1047 (D. Minn. 2008) ("The Court

---

[3](...continued)
*Ins. Co.*, 792 F.2d 1036, 1040 n.2 (11th Cir. 1986) ("We agree with the district court that
corporations cannot experience emotional distress and cannot therefore maintain a suit for
outrageous conduct."); *Earth Scientists (Petro Services) Ltd. v. U.S. Fidelity & Guar. Co.,* 619 F.
Supp. 1465, 1474 (D. Kan. 1985) ("A corporation cannot suffer severe emotional distress.");
*Barreca v. Nickolas,* 683 N.W.2d 111, 124 (Iowa 2004) ("The Factory, as a limited liability
company, certainly cannot suffer emotional distress; such would stretch the bounds of the legal
fiction of corporate personhood too far.").

does not find authority for recognition of a separate claim for conversion of goodwill under Minnesota law.  The Court dismisses the claim for conversion of goodwill.").  In addition, even if the legal theory is plausible, S&S does not say a word about goodwill in the second amended complaint.  It is clear that the conversion claims in that complaint were based on the conversion of Section 8 benefits, not on the conversion of corporate goodwill.

*Fourth*, S&S brought defamation claims on behalf of all plaintiffs against all defendants — and, in the course of pleading these claims, made patently false assertions of fact.  *See* ECF No. 75 at 9-11 (citing Second Am. Compl. ¶¶ 123-24).  With respect to the defamation claims brought on behalf of Barskiy, Shevtsov, and Vicro, the second amended complaint alleged the following:

> Defendants, and *each of them*, in their official and individual capacities knowing the same to be false or with reckless regard [sic] to its truth or falsity, intentionally, maliciously and *willfully published to others* the following *specific comments*, or used words to express or imply *exactly the following*, regarding Plaintiff Vicro and its owners, Plaintiffs Barskiy and Shevtsov, by, among other conduct:
>
> (a) Stating that Vicro is a "made up company";
>
> (b) that Vicro and its owners were comparable to "Al Capone" or organized crime participants; and
>
> (c) that Vicro and its owners were dishonest or criminal.

Second Am. Compl. ¶ 123 (emphasis added).  But the allegation that *each* defendant published *each* of the enumerated statements is indisputably false and is, in fact, contradicted by the very exhibits that were attached to the complaint.[4]

The defamation claims that S&S brought on behalf of the Gurmans and the Babushkins contained similar patently untrue allegations.  The second amended complaint alleged that:

> Defendants, and *each of them*, in their official and individual capacities knowing the same to be false or with reckless regard [sic] to its truth or falsity, intentionally, maliciously and willfully *published to others* the following *specific comments*, or used words to express or imply *exactly the following*, regarding the Babushkin and Gurman Plaintiffs:
>
> (i) that they are untruthful and dishonest people;
>
> (ii) that they had lied about their financial status in violation of the law;
>
> (iii) that they had lied about their familial status in violation of the law;
>
> (iv) that they had lied about their medical conditions in violation of the law; and
>
> (v) that they had lied about their use of their second bedrooms in violation of the law.

---

[4]As noted in the Court's show-cause order, the statement that Vicro is a "made up company" was made by Streich in an email to Peters on January 16, 2009.  *See* Second Am. Compl. Ex. B.  The reference to Al Capone, meanwhile, was made by Shea in an email to Peters on January 27, 2009.  *See* Second Am. Compl. Ex. C.  And although the termination-of-assistance letters that were sent to the Gurmans and the Babushkins may have implied that Vicro and its owners engaged in unlawful activity, those letters were signed only by Streich.  *See* Second Am. Compl. Ex. F.  Defendants Shea, Peters, and Reetz were *recipients* of copies of those letters.  There is no reason to believe that they "willfully published" them.

Second Am. Compl. ¶ 124 (emphasis added).  The termination-of-assistance letters signed by Streich may have implied that the Gurmans and the Babushkins had violated the law.  But there is nothing to suggest that *each* of the defendants who were sued for defamation uttered *each* of the allegedly defamatory statements.

S&S admits that the second amended complaint was improperly drafted and that "each alleged act of defamation should have been pled as a separate cause of action with respect to which person and/or entity was responsible . . . ."  ECF No. 80 at 15; *see also* ECF No. 83 at ¶¶ 36-37.  Again, this mistake — if it was in fact a mistake — might be excusable if the Court had not specifically instructed S&S on how to plead defamation claims.  In its June 30 order, the Court highlighted plaintiffs' defamation claims, observing that, "almost certainly, not *every* defendant uttered *every one* of the allegedly defamatory statements described in paragraphs 162 and 163 of the complaint, as the complaint alleges."  ECF No. 37 at 6-7 (emphasis in original).  The Court further reminded S&S that, under Minnesota law, defamation claims must "clearly identify who said what to whom and when" to be properly pleaded.  *Id.* at 7 n.4.  S&S blatantly disregarded this Court's specific instructions.

*Fifth*, S&S asserted discrimination claims under Title II of the Americans with Disabilities Act ("ADA") against the employee defendants in their personal capacities, even though the law is clear that discrimination claims under the ADA can only be asserted against public entities, not individual employees of public entities.  *See* ECF No. 75 at 11-12 (citing Second Am. Compl. ¶ 183).  S&S contends that there is a split of authority concerning whether, in the public-services context, an individual may be sued in his or her individual capacity for *retaliation*.  *See* ECF No. 80 at 16.  While that may be true, it is also irrelevant.  The Court's

-12-

show-cause order was not directed at S&S's *retaliation* claims under Title II of the ADA, but rather at its *discrimination* claims.[5]

\* \* \*

The Court therefore finds that plaintiffs' attorneys — S&S and attorneys Saliterman, Lundgren, and Larson — violated both Rule 11 and § 1927 by filing a second amended complaint that contained a host of frivolous claims after being clearly and emphatically warned by this Court not to do so. *Cf. Wages v. I.R.S.*, 915 F.2d 1230, 1235 (9th Cir. 1990) (holding that sanctions under § 1927 were appropriate when an attorney "attempt[ed] to file an amended complaint that did not materially differ from one which the district court had already concluded did not state a claim . . . ."). S&S's conduct manifests, at a minimum, reckless disregard for its duties to this Court.

The Metro HRA Defendants argue that S&S's unethical prosecution of this lawsuit forced them to incur over $110,000 in attorney's fees and costs. *See* ECF No. 97 at 2; *see also* ECF No. 93 at ¶¶ 2-4. And the Metro HRA Defendants ask that any monetary sanction that the Court deems appropriate be paid to them, rather than to the Court.

The Court agrees that S&S should be required to pay some of the defense costs that the Metro HRA Defendants incurred. When deciding on the amount of a sanction under § 1927,

---

[5]In a footnote, S&S cites a district court decision from the Eastern District of Michigan, which held that plaintiffs could bring discrimination claims against individuals under the ADA. *See Niece v. Fitzner*, 922 F. Supp. 1208, 1218-19 (E.D. Mich. 1996) (adopting report and recommendation without comment). S&S acknowledges, however, that the en banc Eighth Circuit has held to the contrary. *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010) (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc)).

however, a court must "make an effort to isolate the *additional* costs and fees incurred by reason

of conduct that violated § 1927." *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443, 446 (8th

Cir. 2001) (emphasis added).  The Metro HRA Defendants contend that they incurred over

$110,000 in connection with this lawsuit, but not all of those fees can be attributed to defending

the frivolous claims that S&S asserted in the second amended complaint.  It bears repeating that

some of the plaintiffs did have viable claims against some of the Metro HRA Defendants; thus,

the Metro HRA Defendants would have had to defend a lawsuit asserting colorable due-process

and defamation claims even if S&S had fulfilled all of its ethical obligations.  The Court

therefore discounts the Metro HRA Defendants' fee request and awards them $15,000.  This is a

reasonable estimate — based on the Court's general experience ruling on requests for fees in this

District, the evidence submitted by the parties in this case, and the dozens of hours that the Court

has devoted to this litigation — of the *additional* fees that were incurred by the Metro HRA

Defendants because S&S unreasonably and vexatiously multiplied these proceedings in violation

of § 1927.  *See Lee*, 236 F.3d at 446 (explaining that the task of isolating additional expenses due

to violations of § 1927 "is inherently difficult, and precision is not required").  This sanction is

imposed against S&S[6] and not against attorneys Saliterman, Lundgren, and Larson.[7]

---

[6]Although S&S did not raise this argument in its response to the show-cause order, the Court acknowledges that the Sixth and the Seventh Circuits have held that sanctions under § 1927 may be imposed only against individual attorneys, and not against law firms.  *See Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 n.6 (6th Cir. 2009); *Claiborne v. Wisdom*, 414 F.3d 715, 722-24 (7th Cir. 2005).  The Eighth Circuit, however, has implicitly held that law firms may be sanctioned under § 1927.  *See Lee*, 236 F.3d at 446 (affirming district court's sanction against a law firm under § 1927).  The Eighth Circuit's implicit holding that law firms may be sanctioned under § 1927 is consistent with the decisions of several other circuit courts.  *See Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (affirming sanction against a law firm

(continued...)

### B.  Dobbins Defendants' Motion for Sanctions

As noted, plaintiffs' first amended complaint contained 17 counts against 10 defendants,

including the Dobbins Defendants.  All but one of the counts (breach of contract) were brought

against all defendants.  Thus, on behalf of plaintiffs, S&S sued the Dobbins Defendants for:

malicious prosecution; abuse of process; intentional infliction of emotional distress; defamation;

conversion; trespass; invasion of privacy; violations of the Minnesota Human Rights Act;

deprivation of due process; publication of private facts; tortious interference with contract;

violations of the Federal Fair Housing Act; violations of 42 U.S.C. § 1981; violations of 42

U.S.C. § 1983; violations of Section 504 of the Rehabilitation Act; and violations of Title II of

---

[6](...continued)
under § 1927 and explaining that "[a] court may assess attorney's fees against litigants, counsel, *and law firms* . . . ." (emphasis added)); *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 907 (D.C. Cir. 1998) ("[W]e hold that the district court had jurisdiction to impose sanctions [under § 1927] upon Liddle & Robinson and that in so doing it did not abuse its discretion, and we affirm."); *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 212 (3d Cir. 1985) ("[W]e conclude that the district court properly imposed attorneys' fees and costs against Cravath under U.S.C. § 1927."); *Apex Oil Co. v. Belcher Co. of NY, Inc.*, 855 F.2d 1009, 1020 (2d Cir. 1988) (same).

[7]The Court could impose monetary sanctions against S&S and Saliterman, Lundgren, and Larson under Rule 11, but such sanctions would have to be paid to the Court, and not to the Metro HRA Defendants, because the Metro HRA Defendants did not move for sanctions under Rule 11.  *See Willhite v. Collins*, 459 F.3d 866, 870 (8th Cir. 2006) ("It is not permissible to award attorneys' fees under Rule 11 when the sanctions are imposed sua sponte . . . .").  But the Court can, on its own motion, order S&S and Saliterman, Lundgren, and Larson to pay the attorney's fees of the Metro HRA Defendants under *§ 1927*, as long as the Court affords notice and an opportunity to respond.  *See, e.g.*, *Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006); *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000); *Brown v. Nationwide Mut. Ins. Co.*, 805 F.2d 1242, 1244 (5th Cir. 1986); *Forman v. Mount Sinai Med. Ctr.*, 128 F.R.D. 591, 604 n.24 (S.D.N.Y. 1989).  Here, the Court provided S&S and the individual attorneys with an opportunity to show cause why they should not be sanctioned under Rule 11 or § 1927.  In light of the fee award that the Court has imposed under § 1927, the Court declines to impose additional sanctions under Rule 11.

the ADA.  In total, plaintiffs' first amended complaint contained *186* separate claims against the

Dobbins Defendants.[8]

The Dobbins Defendants move for sanctions under Rule 11 and § 1927.  The Dobbins

Defendants argue that, had plaintiffs and S&S conducted a reasonable inquiry as required by

Rule 11, they would have known that almost all of their claims against the Dobbins Defendants

were frivolous.  To cite a couple of the more obvious examples, a reasonable inquiry would have

disclosed that Dobbins did not trespass on plaintiffs' property, defame any of the plaintiffs, or

invade the privacy of any of the plaintiffs.  *See* ECF No. 47 at 8.

The Court agrees.  All of the factual allegations in the complaint concerning the Dobbins

Defendants relate solely to Dobbins's representation of Metro HRA in the administrative

proceedings to terminate the Gurmans' and the Babushkins' Section 8 benefits.  *See e.g.*, First

Am. Compl. ¶¶ 100-102.  Plaintiffs allege that Dobbins stonewalled their attempts to obtain

discovery in connection with those administrative proceedings.  *See* First Am. Compl. ¶¶ 106,

109.  But these allegations have nothing to do with the vast majority of the claims that plaintiffs

asserted against the Dobbins Defendants — e.g., trespass, defamation, conversion, invasion of

privacy, publication of private facts, and discrimination.  Plaintiffs do not allege, for example,

that Dobbins entered their property, as would be necessary to maintain a claim for trespass.  Nor

do plaintiffs allege that Dobbins published any statement about them, as would be necessary to

maintain claims for defamation or publication of private facts.  Most egregious is that, even after

---

[8]Nine counts were brought on behalf of all plaintiffs; two counts were brought on behalf
of all plaintiffs save Vicro; four counts were brought on behalf of the Gurmans and the
Babushkins; and one count was brought on behalf of Barskiy and Shevtsov.

the Dobbins Defendants pointed out these obvious deficiencies in their motion to dismiss, *see* ECF No. 22 at 14-16, S&S refused to dismiss any of plaintiffs' claims against the Dobbins Defendants.

In its opposition to the Dobbins Defendants' motion for sanctions, S&S makes three arguments. First, S&S maintains that plaintiffs' claims for malicious prosecution and abuse of process against the Dobbins Defendants had legal and factual support. *See* ECF No. 67 at 5-9. Second, S&S contends that the Dobbins Defendants are not entitled to sanctions based on S&S's failure to anticipate their various immunity-based defenses. *Id.* at 9-10. And finally, S&S argues that sanctions are unwarranted because the Dobbins Defendants' motion is procedurally defective. *Id.* at 11-12. All of S&S's arguments are without merit.

As to S&S's first argument: Even if the malicious-prosecution and abuse-of-process claims of the Gurmans and the Babushkins had some factual and legal support,[9] those claims account for just 2 of the 16 counts that plaintiffs asserted against the Dobbins Defendants. S&S does not provide any explanation — in either its opposition to sanctions, *see* ECF No. 67, or its opposition to the Dobbins Defendants' motion to dismiss, *see* ECF No. 29 — as to how it could have reasonably believed that plaintiffs had non-frivolous claims against the Dobbins Defendants for trespass, conversion, defamation, invasion of privacy, and discrimination, to cite just a few examples.

---

[9]As noted above, Barskiy, Shevtsov, and Vicro did not have claims for malicious prosecution or abuse of process against any defendant, as it is undisputed that they were never prosecuted or subjected to any kind of legal process.

As to S&S's second argument:  The Court will assume for the sake of argument that plaintiffs are not required by Rule 11 to anticipate affirmative defenses such as immunity.  But the thrust of the Dobbins Defendants' motion for sanctions is not that S&S should have anticipated their affirmative defenses.  Rather, the Dobbins Defendants seek sanctions because S&S violated Rule 11 by bringing numerous frivolous claims against them in the first place — claims that would have been frivolous even if the Dobbins Defendants enjoyed no immunity of any kind.

Finally, as to S&S's last argument:  S&S argues that the Dobbins Defendants failed to "'describe the specific conduct that allegedly violated Rule 11(b).'"  ECF No. 67 at 11 (quoting Fed. R. Civ. P. 11(c)(2)).  The Court disagrees.  The motion that the Dobbins Defendants served on S&S pursuant to the safe-harbor rule (*see* Fed. R. Civ. P. 11(c)(2) and ECF No. 50 at ¶ 9) provided S&S with adequate notice of why sanctions were being sought — specifically, because S&S, on behalf of plaintiffs, asserted numerous claims against Dobbins and her law firm without having first conducted a reasonable inquiry as to the factual and legal basis for those claims.  *See* ECF No. 47 at 8.  Save for malicious prosecution and abuse of process, S&S does not dispute that plaintiffs' claims against the Dobbins Defendants were frivolous.

The Court therefore finds that S&S filed a complaint against the Dobbins Defendants that contained numerous claims that were not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" in violation of Rule 11(b)(2).  Because S&S has provided no explanation for how it could reasonably have believed that plaintiffs had 16 different causes of action against the Dobbins

Defendants, the Court further concludes that S&S brought these claims to "harass, cause unnecessary delay, [and] needlessly increase the cost of litigation" in violation of Rule 11(b)(1).

District courts have "broad discretion" in fashioning an appropriate sanction under Rule 11, *see Coonts*, 316 F.3d at 753, and may order an attorney who violates the rule to pay some or all of the moving party's attorney's fees, *see* Fed. R. Civ. P. 11(c)(4). Here, the Dobbins Defendants seek reimbursement of all of their defense costs, totaling $32,284.50. *See* ECF No. 50 at ¶ 14. The Court agrees that S&S should pay some of those fees. But a sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). In light of the fact that S&S voluntarily (if belatedly) withdrew all claims against the Dobbins Defendants, the fact that S&S acknowledged and apologized for at least some of its misconduct, and the fact that S&S is unlikely to be compensated for any of the time that it devoted to pursuing claims against the Dobbins Defendants, a sanction totaling over $32,000 would, in the Court's view, exceed the amount necessary to deter S&S and others from engaging in similar misconduct in the future. After carefully reviewing the record, the Court finds that a sanction of $15,000 is warranted under Rule 11 to deter S&S and others from engaging in similar misconduct in the future. *See Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994) ("[T]he primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending.").[10]

---

[10]As explained above, an attorney may not be sanctioned under § 1927 for simply filing a frivolous complaint. *See, e.g.*, *Jensen*, 546 F.3d at 65. While S&S undoubtedly multiplied the proceedings by filing a second amended complaint in violation of this Court's June 30 order,

(continued...)

*C.  Plaintiffs' Motion for Attorney's Fees*

On January 23, 2012, following the dedicated efforts of Judge Graham, plaintiffs agreed to settle their lawsuit against the Metro HRA Defendants and the CCCDA Defendants. Judge Graham read the material terms of the settlement into the record that evening, although the final terms of the settlement agreement were not finalized until sometime in April.  Broadly speaking, Metro HRA agreed to reinstate the Gurmans' and the Babushkins' Section 8 benefits and pay plaintiffs a cash settlement in connection with the Gurmans' and the Babushkins' due-process claims.  *See* ECF No. 110 at 5-7.  Plaintiffs, in turn, agreed to dismiss all of the claims in their second amended complaint with prejudice and on the merits.  *Id.* at 9.  The parties also agreed that plaintiffs could seek up to $50,000 in attorney's fees against the Metro HRA Defendants under 42 U.S.C. § 1988,[11] although the Metro HRA Defendants reserved their right to contest any such fee request.[12]  *Id.* at 8.  Finally, the parties agreed that plaintiffs' fee request would be based only on the due-process claims.  *Id.* at 8, 13.

The Metro HRA Defendants do not dispute that plaintiffs are "prevailing parties" with respect to the due-process claims (which were brought under 42 U.S.C. § 1983) and that

---

[10](...continued)
S&S dropped the Dobbins Defendants from that complaint.  The Court therefore declines to sanction S&S under § 1927.

[11]Section 1988(b) of Title 42 provides, in relevant part, as follows:  "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."

[12]Plaintiffs also agreed not to seek attorney's fees from the CCCDA Defendants.  *See* ECF No. 110 at 9-10.

plaintiffs who prevail on such claims are normally entitled to recover their attorney's fees.  *See*

ECF No. 92 at 4 ("[T]here is at least potentially a legal basis for an award of attorneys' fees to

Plaintiffs.").  But the Metro HRA Defendants nevertheless ask the Court to award no fees to

plaintiffs for two reasons.  First, the Metro HRA Defendants argue that, due to the special

circumstances of this case, an award of attorney's fees would be unjust.  Second, the Metro HRA

Defendants contend that plaintiffs' $50,000 fee request is excessive, unreasonable, and, to a large

extent, unrelated to the due-process claims.  The Court addresses each argument in turn.

As to the first argument:  Prevailing parties in actions governed by § 1988 "'should

ordinarily recover an attorney's fee unless special circumstances would render such an award

unjust.'"  *Hatfield v. Hayes*, 877 F.2d 717, 719 (8th Cir. 1989) (quoting *Newman v. Piggie Park*

*Enters., Inc.*, 390 U.S. 400, 402 (1968)).  The Metro HRA Defendants contend that S&S's

handling of this litigation — specifically, its unreasonable and vexatious multiplication of the

proceedings — justifies the denial of all attorney's fees.

S&S's conduct in this case undoubtedly caused the Metro HRA Defendants to incur

additional defense costs, but that alone does not, in the Court's view, constitute a "special

circumstance" justifying the complete denial of attorney's fees.  *See Hatfield*, 877 F.2d at 720

("Because the language of § 1988 does not include the 'special circumstances' exception, this

judicially created exception should be narrowly construed."); *Jenkins v. Missouri*, 127 F.3d 709,

716 (8th Cir. 1997) ("[A] district court's discretion to deny attorneys' fees to a prevailing

plaintiff is narrow.").  It is true that S&S acted unreasonably and vexatiously in the course of this

litigation, but that should not obscure the fact that the Metro HRA Defendants deprived both the

Gurmans and the Babushkins of property without due process.  The Court has already addressed

S&S's violation of § 1927 by awarding attorney's fees to the Metro HRA Defendants.  The Court must now address the Metro HRA Defendants' violation of the constitutional rights of the Gurmans and the Babushkins.  In the Court's view, the Gurmans and the Babushkins are entitled to recover the attorney's fees and costs that were reasonably incurred to vindicate those rights.

As to the second argument:  Prevailing parties are entitled to only a "reasonable attorney's fee." 42 U.S.C. § 1988(b).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). But in cases such as this, in which plaintiffs prevailed on some but not all of their claims, a court must determine whether the issues on which plaintiffs lost are related to those on which plaintiffs won.  "[U]nrelated issues must be treated as if they were separate cases and no fees can be awarded." *Jenkins*, 127 F.3d at 716 (citing *Hensley*, 461 U.S. at 434-35).  The court should also consider plaintiffs' success in the litigation.  If plaintiffs achieved limited success, the court "should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440.

Plaintiffs contend that they incurred a total of $225,081.69 in attorney's fees during the two years that they were represented by S&S.  *See* ECF No. 86 at 2.  According to S&S, $110,514.75 of that amount was related to the due-process claims.  *Id.*  After reducing some of its time entries by between 50 and 80 percent, S&S asserts that plaintiffs are entitled to $77,231.25 in fees, although, pursuant to the parties' settlement agreement, plaintiffs seek just $50,000.  *Id.*

The Court agrees with the Metro HRA Defendants that plaintiffs' $50,000 fee request is unreasonable.  To begin with, plaintiffs' due-process claims had little or no relationship to the hundreds of other claims asserted by plaintiffs.[13]  The due-process claims arose out of defendants' decision in 2009 to take away the Gurmans' and the Babushkins' two-bedroom vouchers and replace them with one-bedroom vouchers, without giving the Gurmans or the Babushkins constitutionally adequate process.  Only the Gurmans and the Babushkins could assert those due-process claims; Barskiy, Shevtsov, and Vicro could not.  S&S does not explain — and the Court does not discern — how the issue of whether the Gurmans' and the Babushkins' due-process rights were violated in 2009 has anything to do with, for example, whether Barskiy or Shevtsov were defamed.

In addition, it is simply not credible to claim, as S&S does, that nearly half of their $225,081.69 in fees was incurred in pursuing the due-process claims.  In the first amended complaint, S&S brought a total of 938 claims.  Of those 938 claims, only 80  — the (duplicative) due-process and § 1983 claims brought by the two Gurmans and the two Babushkins against all 10 defendants — could possibly be characterized as due-process claims.  Not only did the due-process claims comprise less than 10 percent of the claims filed, but the due-process claims were among the easiest claims to prosecute.  No one disputed that the benefits of the Gurmans and the Babushkins had been reduced, and no one disputed the nature of the process that had been

---

[13]The only claims that had a reasonably close relationship to the due-process claims were the claims for conversion.  Under Minnesota law, conversion is the "willful interference with personal property, done without lawful justification . . . ."  *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (internal quotations omitted).  The unlawful reduction of the Gurmans' and the Babushkins' housing subsidies may therefore have given rise to state-law claims for conversion. (Of course, those claims would have been largely duplicative of the due-process claims.)

afforded to the Gurmans and the Babushkins in connection with those reductions.  The only real question was a legal one:  Did the Gurmans and the Babushkins receive the process that they were due?  Under these circumstances, it is impossible to believe that nearly half of S&S's time was devoted to the due-process claims.  *Cf. Hensley*, 461 U.S. at 440 ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.")

Putting aside the unreasonableness of the overall fee request, many of S&S's individual billing entries reflect work that is not compensable.  To take just one example:  According to S&S's billing entries, plaintiffs and S&S first discussed filing a lawsuit on June 9, 2010 — approximately seven months before S&S filed suit in state court.  *See* ECF No. 87-1 at 16.  Yet S&S submits 15 pages of billing entries — totaling nearly $24,000 — for work that it performed *prior* to June 9, 2010.  *Id.* at 1-15.  Most of those billing entries relate to S&S's representation of the Gurmans and the Babushkins during the administrative proceedings in which defendants attempted to terminate their Section 8 benefits.[14]  But it was defendants' reduction of the Gurmans' and the Babushkins' benefits in 2009 — not defendants' attempt to terminate those benefits in 2010 — that gave rise to the viable due-process claims.  Whatever the merits of the 2010 proceedings, it is clear that the Gurmans and the Babushkins were afforded all of the process that they were due.

---

[14]The tasks for which S&S now seeks reimbursement include, for example, reviewing medical records of the Gurmans and the Babushkins and communicating with their doctors (March 30-31, April 9 and 13), and conducting discovery in advance of a hearing before an administrative-law judge (April 26 and 28, May 21 and 25-26).  *See* ECF No. 87-1 at 4-12.

Even for the compensable tasks such as drafting the complaint, responding to the motions to dismiss, and attending hearings, it is impossible for the Court to divide S&S's time between the (compensable) due-process claims and the (non-compensable) other claims.[15]  For example, Saliterman and Larson spent nearly 60 hours drafting and revising the initial 59-page complaint that was filed in state court.  *See* ECF No. 87-1 at 22-25 and ECF No. 87-2 at 1-6.  Yet of the complaint's 191 numbered paragraphs, just 11 relate directly to the Gurmans' and the Babushkins' due-process claims.  *See* Compl. ¶¶ 46-48, 85-88, 175-178 [ECF No. 1-1 at 14, 23-24, 53].  Had S&S pleaded only due-process claims, the complaint would have been much shorter and S&S would have charged much less for drafting it.  *Cf. Jenkins*, 127 F.3d at 716 (explaining that "services that were redundant, inefficient, or simply unnecessary are not compensable" (citing *Hensley*, 461 U.S. at 434)).

Much the same can be said with respect to plaintiffs' first amended complaint and their responses to the motions to dismiss.  Had plaintiffs brought only due-process claims, for example, they would not have needed to: (1) file a 62-page, 226-paragraph amended complaint with over 150 pages of exhibits; (2) file a second amended complaint after being admonished by

---

[15]S&S attempts to address this problem by discounting some of its billing entries by 50 percent and others by up to 80 percent.  According to S&S, this discount reflects the fact that plaintiffs' claims fell into two categories — the unlawful reduction of the Gurmans' and the Babushkins' Section 8 benefits and the retaliatory actions taken by defendants against Barskiy, Shevtsov, and Vicro.  *See* ECF No. 86 at 5.  This approach is unsatisfactory.  For one thing, many of plaintiffs' claims — e.g., trespass, tortious interference with contract, invasion of privacy, and defamation — fall into neither category.  For another, S&S assumes that all of its work in connection with the reduction of the Gurmans' and the Babushkins' benefits is compensable.  That is not true.  For example, S&S's work in bringing and then defending plaintiffs' discrimination claims under the Fair Housing Act, Section 504 of the Rehabilitation Act, Title II of the ADA, and 42 U.S.C. § 1981 is not compensable, as those claims have nothing to do with whether the Gurmans and the Babushkins were denied due process.

this Court; and (3) defend a second round of motions to dismiss.[16]  Had plaintiffs not sued three

groups of defendants, plaintiffs would not have had to respond to three motions to dismiss.  And

had plaintiffs not sued the employee defendants in their personal capacities, plaintiffs would not

have had to respond to the various immunity defenses raised by those employees.  The Court

does not doubt that plaintiffs incurred significant expenses in litigating this lawsuit.  But most of

those expenses were the direct result of their sue-everyone-for-everything approach and their

counsel's unreasonable and vexatious multiplication of the proceedings.

The Court will therefore award plaintiffs attorney's fees and costs in the amount of

$30,000.  Although the Court has no trouble concluding that plaintiffs' $50,000 demand is

unreasonable, it is impossible for the Court to determine the precise amount of fees and costs that

were reasonably incurred in connection with the due-process claims.  *See Philipp v. ANR Freight*

*Sys., Inc.*, 61 F.3d 669, 675 (8th Cir. 1995) (explaining that the party seeking fees "bears the

burden of establishing an accurate and reliable factual basis for an award of attorneys' fees . . .

and that the district court has wide discretion in making a fee award determination" (internal

citations omitted)).  Based on the Court's considerable experience with similar cases in this

District, the Court concludes that had reasonable plaintiffs retained reasonable attorneys to

reasonably pursue the due-process claims of the Gurmans and the Babushkins — and had those

attorneys pursued those claims to a successful conclusion prior to engaging in substantial

---

[16]Although plaintiffs wisely do not seek reimbursement for the fees that they incurred in drafting the second amended complaint, they do seek reimbursement for the fees that they incurred in defending the motions to dismiss that complaint.  *See* ECF No. 86 at 6.

discovery — the plaintiffs would have incurred no more than $30,000 in attorney's fees and costs.[17]

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.   The Metro HRA Defendants shall recover $15,000.00 in attorney's fees from the law firm of Saliterman & Siefferman, PC, under 28 U.S.C. § 1927.

2.   The Dobbins Defendants' motion for sanctions [ECF No. 45] is GRANTED IN PART, as follows:

   a.   The Dobbins Defendants shall recover $15,000.00 from the law firm of Saliterman & Siefferman, PC, under Fed. R. Civ. P. 11.

   b.   The Dobbins Defendants' motion is DENIED in all other respects.

3.   Plaintiffs' Motion for Attorney's Fees [ECF No. 91] is GRANTED IN PART, as follows:

   a.   Plaintiffs shall recover $30,000.00 in attorney's fees and costs from the Metro HRA Defendants.

---

[17]The Court declines to award much of the costs sought by plaintiffs.  Plaintiffs seek reimbursement for, among other things, fees that S&S paid for its attorneys to be admitted to practice in federal court, transcripts of administrative hearings, and fees paid to Hennepin County for a copy of a quit-claim deed. *See* ECF No. 87-3 at 2-3.  These expenses are not compensable in connection with the due-process claims.

The Court recognizes that some of plaintiffs' costs — such as the filing fee — are compensable, but the Court has taken those costs into account in determining that plaintiffs should recover a total of $30,000.

      b.      Plaintiffs' motion is DENIED in all other respects.

Dated: August  7 , 2012

                                      s/Patrick J. Schiltz
                                      Patrick J. Schiltz
                                      United States District Judge